UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVIN MITCHELL,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>JEROME PRICE, Warden,<br><br>　　　　　　Respondent. | No.  2:14-cv-2258 TLN DAD P<br><br><br>FINDINGS AND RECOMMENDATIONS |

　　　　Petitioner, a state prisoner proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is respondent's motion to dismiss the petition as untimely.  Petitioner has filed an opposition, and respondent has filed a reply.

## BACKGROUND

　　　　A Sacramento County Superior Court jury found petitioner guilty of first-degree murder and possession of an assault weapon.  Drive-by and gang enhancement allegations were also found by the jury to be true.  As a result of that verdict, on January 3, 1997, petitioner was sentenced to twenty-five years to life plus nine years in state prison.  On November 3, 1998, the California Court of Appeal for the Third Appellate District affirmed the judgment of conviction on appeal.  On February 17, 1999, the California Supreme Court denied review.  (Pet. at 2-4 & Resp't's Lodged Docs. Nos. 1-3.)

/////

On or about February 8, 2010, petitioner filed the first of nine post-conviction applications for relief which he pursued in state court. The Sacramento County Superior Court, the California Court of Appeal for the Third Appellate District, and the California Supreme Court denied all of his petitions for a writ of habeas corpus and/or petitions for review as untimely and/or successive or in summary fashion, except for his sixth state habeas petition which petitioner voluntarily withdrew. (Resp't's Lodged Docs. Nos. 4-21.)

On September 25, 2014, petitioner commenced this action by filing a federal petition for writ of habeas corpus. In that petition, petitioner claims that he is actually and factually innocent of the charged offenses. In support of his actual innocence claim, plaintiff has submitted three declarations, two of them from witnesses who testified at his trial. (Pet. at 6 & Attachs. (Parish Decl., Brown Decl. & Stevenson Decl.)

## ANALYSIS

I. AEDPA Statute of Limitations

On April 24, 1996, Congress enacted AEDPA which amended 28 U.S.C. § 2244 by adding the following provision:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the

> pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year AEDPA statute of limitations applies to all federal habeas corpus petitions filed after the statute was enacted and therefore applies to the pending petition. See Lindh v. Murphy, 521 U.S. 320, 322-23 (1997).

II. Application of § 2244(d)(1)(A)

As noted above, a Sacramento County Superior Court jury found petitioner guilty of first-degree murder and possession of an assault weapon and found that drive-by and gang enhancement allegations were true. On January 3, 1997, petitioner was sentenced to twenty-five years to life plus nine years in state prison. On November 3, 1998, the California Court of Appeal for the Third Appellate District affirmed petitioner's judgment of conviction on appeal. On February 17, 1999, the California Supreme Court denied review. (Pet. at 2-4 & Resp't's Lodged Docs. Nos. 1-3.)

For purposes of federal habeas review, petitioner' judgment of conviction became final on May 18, 1999, ninety days after the California Supreme Court denied review. See Summers v. Schriro, 481 F.3d 710, 717 (9th Cir. 2007); Bowen v. Roe, 188 F.3d 1157, 1158–59 (9th Cir. 1999). The AEDPA statute of limitations for petitioner to seek federal habeas relief began to run the following day, on May 19, 1999, and expired one year later on May 18, 2000. Petitioner did not file his federal habeas petition in this case until more than fourteen years later, on September 25, 2014. Accordingly, petitioner's federal petition for writ of habeas corpus is untimely unless he is entitled to the benefit of tolling.

III. Application of § 2244(d)(2)

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted" toward the AEDPA statute of limitations. 28 U.S.C. § 2244(d)(2). In this case, petitioner is not entitled to statutory tolling under § 2244(d)(2) because he did not file his first state post-conviction challenge until on or about February 8, 2010, almost ten years after the one-year statute of limitations for the seeking of federal habeas relief had expired. It is well established

1    that "section 2244(d) does not permit the reinitiation of the limitations period that has ended
2    before the state petition was filed." Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003).
3    Accordingly, petitioner is not entitled to statutory tolling of the applicable statute of limitations.
4    IV.  Equitable Tolling
5         In his opposition to respondent's motion to dismiss, petitioner summarily contends that he
6    is entitled to equitable tolling because he claims that he could not "until recent" obtain the
7    affidavit evidence in support of his actual innocence claim. (Pet'r's Opp'n to Resp't's Mot. to
8    Dismiss at 2.)
9         A petitioner who seeks equitable tolling of AEDPA's one-year statute of limitations must
10   show that (1) some "extraordinary circumstance" prevented him from filing on time, and (2) he
11   has diligently pursued his rights. Holland v. Florida, 560 U.S. 631, 649 (2010); Luna v. Kernan,
12   __ F.3d __, __, 2015 WL 1903794 at *10 (9th Cir. 2015) (discussing Gibbs v. LeGrand, 767 F.3d
13   879 (9th Cir. 2014) ("stop clock" approach) and Spitsyn v. Moore, 345 F.3d 796 (9th Cir. 2003)
14   (requiring diligence through time of filing)); see also Curiel v. Miller, 780 F.3d 1201, 1205 (9th
15   Cir. 2015) ("equitable tolling is available . . . only when extraordinary circumstances beyond a
16   prisoner's control make it *impossible* to file a petition on time and the extraordinary
17   circumstances were the *cause* of [the prisoner's] untimeliness."). The threshold showing for
18   equitable tolling is "very high." Curiel, 780 F.3d at 1205.
19        In this case, petitioner has not demonstrated that he is entitled to equitable tolling of the
20   AEDPA statute of limitations. First, petitioner has not shown that any "extraordinary
21   circumstance" stood in his way of timing filing his federal habeas petition. Although he
22   summarily contends that he could not obtain the affidavit evidence that he has submitted in
23   support of his actual innocence claim until recently, he has not explained why such evidence was
24   not available to him for the ten years that elapsed between entry of his judgment of conviction
25   and his filing of his first state habeas petition. As discussed herein, both Ms. Arlisa Parish and
26   Mr. Richard Brown's affidavits attest to matters that purportedly took place at the time of
27   petitioner's arrest. (Parish Decl. & Brown Decl.) In this respect, petitioner's affidavit evidence is
28   not new at all. See Pace v. DiGugliemlmo, 544 U.S. 408, 419 & n.9 (2005) (rejecting equitable

4

tolling for a petitioner who waited years to assert his claims that allegedly cited "new" evidence because the evidence was not new at all; it consisted of affidavits from the petitioner's parents and sibling regarding a meeting with petitioner's counsel and petitioner years before he had filed his habeas petition). Given the complete lack of a supporting showing in this case, the undersigned concludes that petitioner has not demonstrated that any "extraordinary circumstance" caused his untimely filing as required.

Moreover, petitioner has not established that he diligently pursued his rights. Specifically, petitioner has not explained what measures he took to pursue his actual innocence claim or what measures he took to obtain the affidavit evidence he now believes supports his claim of actual innocence. As noted above, petitioner waited more than ten years to file his first challenge to his judgment of conviction in state court. It strains credulity to suggest that a reasonable person who is actually innocent of first-degree murder would sit on such a claim for more than a decade without pursuing it. See Rudin v. Myles, 781 F.3d 1043, 1055 (9th Cir. 2015) (equitable tolling requires reasonable diligence); Doe v. Busby, 661 F.3d 1001, 1015 (9th Cir. 2011) (reasonable diligence "requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances."). Again, this is not an instance where petitioner's "new evidence" is actually new. Finally, as counsel for respondent points out, here petitioner further delayed even as he pursued his many habeas petitions in state court. For example, there was an eight month delay between petitioner's first and second state habeas actions, nearly a two year delay between his third and fourth state habeas actions, and five months of delay between his seventh and eighth state habeas actions. (Lodged Docs. Nos. 5-6, 8-9 & 17-18). In light of these undisputed and unexplained delays, the court finds that petitioner has not exercised the required diligence to benefit from equitable tolling of the applicable statute of limitations.

In short, petitioner has not carried his "heavy burden" of showing that an extraordinary circumstance stood in his way of filing a timely federal habeas petition or that he diligently pursued his rights. Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010). See also Williams v. Dexter, 649 F. Supp. 2d 1055, 1061-62 (C.D. Cal. 2009) (a petitioner is not entitled to equitable tolling when the claimed entitlement to such tolling is "unsupported by competent evidence and is

1  grossly conclusory."); Evans v. Adams, 423 F. Supp. 2d 1087, 1091 (C.D. Cal. 2006) (petitioner
2  not entitled to equitable tolling where he "has not even bothered to assert sufficient facts to
3  suggest equitable tolling might be warranted."). Accordingly, petitioner is not entitled to
4  equitable tolling of the AEDPA statute of limitations in this case.
5  V.  Actual Innocence
6      A.  Legal Standard
7      The Supreme Court has long recognized that federal courts may reach the merits of an
8  otherwise procedurally barred habeas petition in a "narrow class of cases . . . implicating a
9  fundamental miscarriage of justice." Larsen v. Soto, 742 F.3d 1083, 1088 (9th Cir. 2013)
10 (quoting Schlup v. Delo, 513 U.S. 298, 314-315 (1995)). "[A]ctual innocence, if proved, serves
11 as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . .
12 or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, __ U.S. __, __
13 133 S. Ct. 1924, 1928 (2013). See also Stewart v. Cate, 757 F.3d 929, 937 (9th Cir. 2014)
14 ("When an otherwise time-barred habeas petitioner 'presents evidence of innocence so strong that
15 a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the
16 trial was free of non-harmless constitutional error,' the Court may consider the petition on the
17 merits.") (quoting Schlup, 513 U.S. at 318).
18     The Supreme Court has cautioned, however, that tenable actual innocence claims are quite
19 rare. McQuiggin, 133 S. Ct. at 1928. See also Larsen, 742 F.3d at 1095-96 (9th Cir. 2013) ("The
20 Schlup standard 'is demanding,' and precedents holding that a habeas petitioner satisfied its
21 strictures have typically involved dramatic new evidence of innocence."). A federal habeas
22 petitioner does not satisfy the threshold requirement "unless he persuades the district court that, in
23 light of the new evidence, no juror, acting reasonably, would have voted to find him guilty
24 beyond a reasonable doubt." McQuiggin, 133 S. Ct. at 1928. Although not dispositive, the
25 timing of a petition bears on the reliability of evidence that purports to show actual innocence. Id.
26 In this regard, a district court, faced with an actual innocence claim, "should count unjustifiable
27 delay on a habeas petitioner's part . . . as a factor in determining whether actual innocence has
28 been reliably shown." Id.

6

B. <u>Discussion</u>

In this case, neither party disputes the factual background of this case. The California Court of Appeal summarized those underlying facts as follows:

<u>December 28, 1995</u>

On December 28, 1995, Harry "Sonny" Polhill, a member of the Oak Park Bloods, went to the Union Restaurant in Old Sacramento. He was looking for defendant Johnson, a member of the rival gang, the Meadowview Bloods, because Johnson had been driving through Oak Park and "mugging" Sonny, i.e., giving him disrespectful looks. Instead, Sonny encountered defendant Mitchell, also a member of the Meadowview Bloods, outside the restaurant. Mitchell and Sonny began to argue, each making derogatory remarks about the other's respective neighborhoods. Sonny punched Mitchell in the face, and Mitchell ran off.

<u>December 30-31, 1995</u>

On December 30, 1995, Bradley Hebert was shot and killed in an apparent drive-by shooting on the corner of 33d Street and 9th Avenue in the Oak Park neighborhood. Hebert was a friend of Sonny's from Oak Park, and was referred to as an "O.G." "O.G." refers to "original gangster" or "older gangster." Thirty-third Street and Ninth Avenue is an area frequented by members of the Oak Park Bloods. Nine-millimeter shell casings and spent nine-millimeter bullets were recovered at the scene.

On the night of the Hebert homicide, Mitchell's girlfriend Arlisa Parish and her best friend Akiea Sims talked on the phone for several hours. During the course of the conversation, they learned that Hebert had been killed, and Arlisa speculated as to Mitchell's possible involvement. Shortly thereafter, Mitchell called Arlisa and told her he had just done "some foul shit." Arlisa subsequently told Akiea that Mitchell had admitted killing Hebert and had made jokes about it.

<u>January 2, 1996</u>

In the early morning hours of January 2, 1996, shots were fired at the home of defendant Johnson. No one was injured, and no suspects were apprehended.

Anticipating an escalation of the conflict between the Oak Park and Meadowview Bloods, police conducted surveillance of Arlisa Parish's home, where Mitchell often stayed. That evening, a white GMC arrived and three Black males began loading clothes and blankets into the car. A short time later, two more Black males arrived in a white Monte Carlo. About 20 minutes later, both vehicles left the house "in convoy fashion."

Officers followed the GMC and the Monte Carlo in unmarked cars. Both vehicles proceeded north on Center Parkway, and got in the left-turn lane at Valley Hi. At that point, the GMC made a U-turn and proceeded south on Center Parkway, while the Monte Carlo made the left turn and proceeded west on Valley Hi. Officers following the GMC activated their lights, and the vehicle immediately pulled over to the side of the road. Officers

7

> observed a shotgun in plain view inside the vehicle. The GMC was registered to a Richard Brown, who was driving the vehicle; defendant Mitchell was in the passenger seat.
>
> Officers following the Monte Carlo onto Valley Hi activated their sirens, which precipitated a high speed chase through residential streets. During the chase, officers observed the driver's side door open several times, and they saw an empty red and white nine-millimeter ammunition box thrown from the passenger side of the car. The chase ended when the Monte Carlo crashed into a tree. Defendant Johnson, the driver, exited the Monte Carlo on foot, discarding a loaded .22 semi-automatic handgun as he fled. He was apprehended shortly thereafter. Defendant Couch, the front seat passenger, and Dupree Allen, the back seat passenger, remained in the car and were arrested.
>
> Two ski masks were found inside the Monte Carlo, as well as a plastic ammunition holder with .223-caliber Winchester ammunition bearing fingerprints of defendant Mitchell and Allen. A Colt AR-15 semi-automatic .223-caliber assault rifle was found along the path taken by the Monte Carlo, as well as a magazine for the rifle and some loose ammunition.
>
> Richard Brown, the driver of the GMC, told detectives that Mitchell had confided to him that he wanted to pay Sonny back for disrespecting him, and that he was the shooter in the Hebert homicide.

(Resp't's Lodged Doc. 1 at 3-6.) See 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct").

Petitioner has submitted with his federal habeas petition three affidavits, dated between March and July 2014, that he argues demonstrate that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." McQuiggin, 133 S. Ct. at 1928. First, Ms. Arlisa Parish states in her 2014 declaration that "for years" she has wanted to tell someone that the information she gave law enforcement concerning petitioner was an "involuntary statement due to the fact I was young and intimated [sic] by police to the point that I didn't know what to do." In that declaration, Ms. Parish also states as follows. Her original statement implicating petitioner resulted from police intimidation and had no truth to it. Rather, the police coerced the statement from her in order to charge petitioner with murder and close the case. Police told her that they would charge her for the crime and mentioned her child. She knew she had to say something to make the police let her go, but she also knew that the police had written a statement that was untrue and coerced. She felt true fear when the police threatened her with life in prison. (Parish Decl.)

Mr. Richard Brown states in his 2014 declaration that he never knew of anyone connected to the alleged crime. Rather, everything he had heard about the crime was common knowledge on the street and came from parties that knew nothing of the crime. In that declaration Mr. Brown also states as follows. He informed the police that he knew nothing about the crime and only stated what others had told him. Everything Mr. Brown said to law enforcement was involuntary and coerced. At no time did petitioner tell Brown about his involvement in any crime. Brown had no knowledge of anyone receiving information that petitioner had committed a crime. The police forced him to implicate petitioner based on a rumor started by people who "hated on" petitioner. Mr. Brown repeatedly informed police that he did not know anything about the crime. In fact, the detectives informed him about the gun and details about the crime that he never knew anything about until he was told by police. (Brown Decl.)

Ms. Yvonne Chapples Stevenson states in her 2014 declaration that she had a telephone conversation roughly two years ago with a Ms. Akia Sims. Sims told her that she recently had contact with petitioner at a correctional facility and felt bad about him getting "rolled up." Sims also told Stevenson that she was young "back then" and did not realize the impact she had in petitioner's case. Sims said she wanted petitioner to be able to have a chance to live his life as a mature adult with his family. Sims also said she would be happy to help petitioner in his efforts to be released from prison if it would not affect her career or family. (Stevenson Decl.)

The undersigned finds that the declarations submitted by petitioner in support of his claim for relief do not meet the threshold requirement for presenting a cognizable claim of actual innocence. The Supreme Court has made clear that a credible gateway claim requires "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." House v. Bell, 547 U.S. 518, 537 (2006). The declarations submitted by petitioner, and summarized above, do not offer new evidence. First, with respect to Ms. Arlisa Parish's declaration, according to the transcript from petitioner's trial, Ms. Parish first recanted her statement to law enforcement during her

/////

/////

9

extensive testimony at petitioner's trial.[1] (Lodged Doc. 22 at 517, 539) At that trial Parish testified that petitioner never told her that he killed anyone and that she gave a statement to law enforcement because she was "trying to go home" and felt fearful and threatened by police. (Id. at 506, 533 & 539) She also testified that she was only seventeen years old at the time she was interviewed by police. (Id. at 533)

Similarly, with respect to Mr. Richard Brown's declaration, he also recanted his statement to law enforcement during his extensive testimony at petitioner's trial. When initially interviewed, Brown told law enforcement that petitioner told him that "they went over there and took care of him" and that they knew "where he was outside or whatever, and shot him." (Lodged Doc. 22 at 1064-1065) Brown also told a detective that petitioner had confessed the murder to him for the most part. (Id. at 1065) However, at petitioner's trial, Brown testified that he "was scared" and "afraid" at the time of his interview at the police station. (Id. at 1031, 1141, 1152) He further testified at trial that the detective interviewing him was forceful, hostile, and threatening him. (Id. at 1033, 1036, 1152) Brown also testified that he gave an untruthful statement to law enforcement regarding the shotgun, the homicide, and the night of the arrest because the detective told him he "was going to go to jail for 25 to life" and that "If I can't get the big fish, I'm gonna take all the little fish down for anything and everything." (Id. at 1054-55, 1124-25, 1204) Brown testified that he believed then that if he told the detective what he wanted to hear, he would get to go home. (Id. at 1059) At petitioner's trial, Brown emphatically denied knowing details about the crime or that petitioner told him he shot somebody or killed somebody. (Id. at 1153, 1156)

Finally, with respect to Ms. Yvonne Chapples Stevenson's 2014 declaration, therein she only attests to a conversation she allegedly had with Ms. Akia Sims. Stevenson's declaration clearly does not offer any "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." House, 547 U.S. at 537. As counsel for respondent points out,

---

[1] Of course, "[r]ecantation testimony is properly viewed with great suspicion. It . . . is very often unreliable . . ., and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction." Dobbert v. Wainwright, 468 U.S. 1231, 1233-34 (1984).

although Akia Sims reportedly felt bad that petitioner had gotten "rolled up" in the murder, she never told Stevenson that she gave false statements to law enforcement or testified falsely at petitioner's trial.

A reasonable jury could conclude that the original statements made by Parish and Brown to police in which they implicated petitioner were consistent with the other evidence and were therefore credible and that their recantations of those statements were not credible. Indeed, that is what the jury at petitioner's trial apparently did. In short, the three declarations submitted by petitioner in support of his pending petition do not demonstrate that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." McQuiggin, 133 S. Ct. 1935. Thus, petitioner has failed to show that "this one of the 'extraordinary' cases where 'a court cannot have confidence in the outcome of the trial.'" Stewart, 757 F.3d at 940. Accordingly, petitioner is not entitled under federal law to pass through the actual innocence gateway on his time-barred petition.

VI. Evidentiary Hearing

In his opposition petitioner requests an evidentiary hearing "to establish what portions of any of the affidavits submitted present probative value[.]" (ECF No. 21 at 8.) The undersigned concludes that an evidentiary hearing is not necessary to resolve petitioner's actual innocence claim. Although in some instances, newly-presented evidence may raise questions about the credibility of a trial witness, as discussed above, both Ms. Parish and Mr. Brown's declarations are consistent with their trial testimony in which they recanted their original statements to police and therefore, the court does not need to make any further credibility assessments. Stewart, 757 F.3d at 941. Accordingly, the court finds that an evidentiary hearing is not warranted under these circumstances.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss (Doc. No. 17) be granted;

2. Petitioner's petition for writ of habeas corpus be dismissed with prejudice as time-barred; and

3. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated:  May 20, 2015

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
mitc2258.157